Fannie M. OWENS, Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–8344

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 17, 1984.

Patricia Barron, Americus, Ga., for plaintiff-appellant.

John L. Lynch, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

Plaintiff Fannie Owens appeals the district court's summary judgment affirming the Social Security Administration's determination that she was ineligible for Supplemental Security Income (SSI) benefits due to excess resources. Because the administrative law judge failed to articulate the standard upon which he based his decision, or to pass on the critical issue of the claimant's credibility during her administrative hearing, we are unable to determine whether his decision had a rational basis or was based on substantial evidence. We therefore reverse and remand for further findings at the administrative hearing level.

## I.

Mrs. Owens began receiving SSI benefits in October of 1980. During a periodic review of her case, the Social Security Administration discovered the existence of a bank account held jointly by Mrs. Owens and her daughter which had contained in excess of the SSI resource limit of $1,500 since at least 1974 and which had a balance of $19,447.95 on September 30, 1981. Based on this evidence, the Administration terminated her benefits in November of 1981 and required her to return the $3,465.50 she had so far received.

In her hearing before an administrative law judge (ALJ), Mrs. Owens argued that the money should not be attributed to her because it had never been available for her use. She and her daughter Minnie testified that all of the money had come out of Minnie's earnings as a beautician, that it had always been intended exclusively for the education of Minnie's son, and that Mrs. Owens' name was on the account only for convenience and survivorship purposes.

Documentary evidence established further that there had been no activity in the account since 1976, and that there had never been a withdrawal from the time the account was first opened in 1973 until it was closed in November of 1981. Mrs. Owens also argued that even if the money in the account was a resource attributable to her, the Administration should waive repayment. She testified that she had not understood that having her name on the account would violate the $1,500 resource limit, because "I didn't understand it meant your name couldn't be on money." The ALJ rejected both arguments. First, he concluded that the evidence was "insufficient to establish a manifest intent to create either an expressed or implied trust in the savings account jointly held by Minnie Reviere and Fannie Owens." Second, he concluded that she was not "without fault in causing and accepting the overpayment," and thus refused to apply the Social Security regulation providing for waiver, 20 C.F.R. § 416.550. The ALJ therefore entered a decision demanding repayment of the benefits she had so far collected.

In 1977 the Appeals Council adopted the policy of looking to the intent of the parties when evaluating whether a claimant should be held to have access to the funds in a joint bank account.[1] At the claims processing level, however, the Administration continued to direct its representatives to maintain an irrebuttable presumption that funds in a joint bank account held by a claimant should be attributed to her as resources for SSI purposes, as long as she had legal title and unrestricted access to the account under state law. On August 1, 1982—while Mrs. Owens' claim was pending before the Appeals Council—the Administration adopted the Appeals Council's position at the claims processing level.[2]

---

1. In Interim Circular No. 41, Supplement E, August 5, 1977, the Appeals Council stated that:

     The Appeals Council has adopted the following policy regarding joint bank accounts as resources which it will apply to cases pending before it.
     (1) The intent of the parties will be considered in determining ownership of the funds.

     (2) Where one party is added to the account merely for convenience purposes and survivor rights, the entire balance will be charged to the other party.

2. The Administration's internal regulations now state that:

     Current statements from those designated as account holders will usually be the best evidence obtainable to determine who made

In her brief to the Appeals Council, Mrs. Owens argued that the ALJ should be reversed because he applied the irrebuttable presumption standard. This standard had been rejected by the Appeals Council at the time of the ALJ's decision and its validity had been further discredited by the Administration's policy change while Mrs. Owens' appeal was pending before the Appeals Council. In its decision, the Appeals Council reaffirmed its commitment to its policy of looking at the intent of the parties to a joint bank account, and stated that "[w]here one party is added to the account merely for convenience purposes and survivor rights, the entire balance will be charged to the other party." It added, however, that "[i]t appears that the administrative law judge considered the Council's policy on joint bank accounts in his decision." The Council additionally inferred that the ALJ had simply found that the claimant's testimony did not constitute sufficiently "clear and convincing evidence" to rebut the presumption of ownership. It affirmed on these grounds, and its opinion became that of the Secretary for purposes of our review.

## II.

We turn now to the issues before us on this appeal. First, we must determine whether there is substantial evidence to support the Secretary's conclusion that the funds in the claimant's joint account should have been attributed to her as income. Second, we are to determine whether substantial evidence supports the Secretary's conclusion that the claimant was not without fault in causing the overpayment.

■ As we have indicated many times, the scope of our review is limited to determining whether there is substantial evidence in the record as a whole to support the Secretary's findings. 42 U.S.C. § 405(g); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983); *Smallwood v. Schweiker*, 681 F.2d 1349, 1351 (11th Cir. 1982); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982). We are not free to reweigh the evidence or to substitute our judgment for that of the Secretary. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's factfinding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position. *See Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983).

■ In this case, our evaluation centers on the adequacy of the opinion rendered by the ALJ. The ALJ does, of course, have wide latitude as finder of fact to evaluate the weight of the evidence, particularly the credibility of the testimony. If he does reject the claimant's testimony on credibility grounds, however, he must explicitly state as much. The failure to conform to this requirement becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982); *Viehman v. Schweiker*, 679 F.2d 223, 227–29 (11th Cir.1982); *Walden v. Schweiker*, 672 F.2d 835, 839–40 (11th Cir.1982). In addition, he must state with sufficient clarity the rule being applied in order to assure that a rational and consistent standard guides the agency's decision. A clear articulation of both fact

the deposits and withdrawals. This is because there normally will be no records available from the financial institution to definitively prove allegations as to the use of funds, i.e., who made deposits and withdrawals, whether they were acting in a fiduciary capacity, etc.
. . .
. . . .
Similarly, current statements by the parties involved will usually be the best evidence obtainable to determine the nature of the

agreement or understanding between the account holders as to the ownership and use of the funds. When friends and relatives enter into such agreements they are normally oral rather than written agreements.
Transmittal No. 4, Program Operations Manual System, S.S.A. Pub. No. 68–0501120, July 15, 1982. Once the Administration discovers the existence of such an account, it requires the claimant to change its legal form to reflect the agreements of the parties.

and law is essential to our ability to conduct a review that is both limited and meaningful. Unfortunately, we find that both elements are lacking in the ALJ's hearing decision.

■ The claimant first argues that, in view of the clear testimony offered by both her daughter and herself, the ALJ lacked substantial evidence for rejecting her claim that she had no actual access to the funds in the account. She asserts that he made such an error because he mistakenly applied the irrebuttable presumption that the funds in a joint bank account are resources attributable to the claimant.[3] The ALJ may indeed have applied the improper test; we simply cannot tell. His articulation of the standard being applied was ambiguous at best, and suggests if anything that he in fact had an incorrect view of the Appeals Council's policy on joint bank accounts.[4] Even more serious was the ALJ's failure to make any finding at all on the credibility of the testimony relating to this issue. Such

a finding was especially critical to the outcome of this case because the testimony in this record, if credible, would adequately rebut the Administration's presumption of ownership. The claimant testified in clear terms that the money in the bank account did not belong to her, and that she could not have put it to her own use under any circumstances. In addition, her testimony was completely corroborated by the testimony of her daughter, the other joint owner of the account. If their testimony is believed, the remainder of the evidence—none of which is inconsistent with their story—is so minimal that we would be compelled to find that the Secretary lacks substantial justification for attributing the funds to the claimant.[5] If, on the other hand, the claimant's testimony is disbelieved, the remainder of the evidence could justify the ALJ's conclusion. As the Appeals Council pointed out, the account was opened in 1973, the year in which the claimant last worked. The account was located

---

3. A third issue that underlies this claim is whether the claimant created a trust instrument under either Georgia law or the Social Security regulations. Indeed, the district court erroneously assumed that the sole issue in this case was whether the claimant had actually created a trust under state law. The claimant did introduce evidence before the Appeals Council suggesting that in 1974 the names on the account had been changed from "Fannie Owens or Minnie Reviere" to "Reginald Reviere, Fannie Owens, Guardian." The Council rejected this evidence in favor of conflicting evidence in the record which indicated that the name changes had not occurred until 1981. As finder of fact on this issue, the Council had the option of resolving this conflict against the claimant. The claimant appears to have dropped this argument in this appeal. As our opinion indicates, however, the district court should have evaluated not only whether the agency properly applied any applicable state law, but also whether it properly evaluated the claimant's case in light of the applicable federal statute, regulations, and principles of administrative law.

4. We are unpersuaded by the Appeals Council's reasoning that the ALJ properly found against the claimant because her testimony was simply not substantial enough to prove lack of ownership. Such an inference might be possible where the claimant's testimony, even if accepted as true, was ambiguous or incomplete. Here, however, the claimant's testimony was so clear that if it is credited she clearly met her burden of rebutting the presumption of ownership. *See*

*Viehman v. Schweiker,* 679 F.2d 223, 228 (11th Cir.1982).

5. The claimant's first argument presumes, of course, that the judiciary has the power to hold the agency to its own rules. Such is not always the case. *See Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (concluding that claims manual rules promulgated for claims representatives do not bind the SSA). Indeed, were we faced only with a claim based on a claims manual rule, *Hansen* would preclude us from announcing that the Administration must be bound by it. We find this case to be distinguishable from *Hansen* however, for a number of reasons. First, the Appeals Council has explicitly affirmed the validity of looking to the intent of the parties in this case. There is thus no question but that the highest adjudicatory body of that agency has made a policy choice between the more easily administered irrebuttable presumption rule and the more accurate individualized determination of intent. Thus, while we defer to the agency's policy choice, we require it to hold to that choice with some regularity. Second, we think that the current policy is more consistent with judicial opinions holding that the test for attribution of income and resources is one of actual availability, rather than legal title. *See Rosenfeld v. Secretary of Health and Human Services,* 563 F.Supp. 1192, 1195 (E.D.N.Y.1983) (citing cases).

**1516**

in her home town, rather than in Atlanta where her daughter lives. The claimant, rather than her daughter, made all of the deposits and the final withdrawal. Limited to these facts, the trier of fact could reasonably have concluded that the claimant could, with her daughter's blessing, use the funds in the joint account if a serious need arose. We decline, however, to affirm simply because some rationale might have supported the ALJ's conclusion.[6] Such an approach would not advance the ends of reasoned decision making. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

We are likewise unable to dispose of the waiver issue because of the incompleteness of the ALJ's findings. In addressing that issue, the ALJ did properly set forth the applicable standard under the Social Security regulations.[7] Although the claimant clearly testified that she simply did not understand that having her name on her daughter's account would render her ineligible for benefits, the ALJ simply concluded, without addressing the credibility of her testimony, that the waiver provision should not apply. Thus, we cannot determine whether the ALJ had substantial justification for his finding. *See Schwingel v. Harris*, 631 F.2d 192, 197–98 (2d Cir.1980).

█ Our holding that the ALJ must pass on the credibility of the claimant is not new, nor is our requirement that he state with at least some measure of clarity the grounds for his decision. We must continue to insist on these requirements so that we can perform the function entrusted to us in the administrative scheme. We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently ap-

plied standard, and was carefully considered in light of all the relevant facts. Because the ALJ did not provide us with the information essential to such an evaluation, we reverse with instructions to the district court to remand for further findings at the administrative hearing level.

REVERSED and REMANDED.

---

6. In so doing, we refuse to defer to the Appeals Council's speculations as to the ALJ's reasoning. While we give great weight to the agency's articulation of the proper test for resources, and while we acknowledge that its ultimate review panel has some latitude to correct the hearing officer's mistakes, such remedial reasoning has its limits. Here, the Appeals Council was in no better position than we to evaluate the demeanor of the witnesses or to determine whether the

ALJ applied the proper standard. Although it supplied some possible grounds upon which the ALJ's opinion may have been valid, it could not resolve the critical problem of determining whether the ALJ in fact had based his decision on those grounds, rather than on improper ones.

7. 42 U.S.C. § 1383(b)(1); 20 C.F.R. §§ 416.550–416.552.