[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 5, 2011
JOHN LEY
CLERK

No. 11-11434
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-00790-SRW

CRISTINE DIANE DEMPSEY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 5, 2011)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Cristine Dempsey appeals the district court's order affirming the

Commissioner of Social Security's denial of her application for disability benefits,

filed pursuant to 42 U.S.C. § 405(g).[1]  On appeal, Dempsey argues that the

Administrative Law Judge ("ALJ") erred when he failed to address some of her

treating physicians' opinions and improperly evaluated Dempsey's fibromyalgia.

After review, we reverse and remand for further proceedings.

## I.  FACTUAL BACKGROUND

In March 2008, Dempsey applied for disability insurance benefits, alleging

that she was unable to work as of July 1, 2002, due to pain in her back, neck and

hips.  Dempsey's application was denied initially and on reconsideration.

After a hearing, the ALJ issued a decision denying Dempsey disability

insurance benefits.  Following the five-step evaluation process, the ALJ found

that: (1) Dempsey had not engaged in substantial gainful activity from her alleged

disability onset date of July 1, 2002 to September 30, 2006, her date last insured;

(2) Dempsey had severe impairments of lumbar spinal stenosis, degenerative disc

disease of the cervical spine and a history of cervical laminectomies; (3) none of

---

[1]In her appeal, Dempsey includes her application for supplemental security income; however, the agency apparently never issued a final ruling with respect to that application. Therefore, we lack jurisdiction to review it.  See 42 U.S.C. §§ 405(g), 1383(c)(3) (explaining that only a "final decision" of the Commissioner is subject to judicial review).

Dempsey's impairments, alone or in combination, met or medically equaled a listed impairment; (4) Dempsey had the residual functional capacity ("RFC") to perform a range of light work; and (5) Dempsey's residual functional capacity permitted her to perform her past relevant work as a manager/assistant manager, a bookkeeper and a cashier.

With respect to Dempsey's RFC, the ALJ found that: (1) Dempsey could sit for a total of six hours and stand and walk for one hour each at a time during an eight-hour work day; (2) Dempsey could lift and carry up to five pounds continuously, ten pounds frequently and twenty pounds occasionally; (3) Dempsey could not crawl, but could reach frequently and bend, squat or climb occasionally; (4) Dempsey would have to avoid unprotected heights and moving machinery and could have only moderate exposure to driving; and (5) Dempsey "has not had significant work-related mental limitations."

In summarizing the medical evidence, the ALJ noted that Dr. E. Ross Clifton (one of the treating physicians) diagnosed Dempsey with fibromyalgia in 2002, but the ALJ did not review Dempsey's treatment history for fibromyalgia. The ALJ did not identify fibromyalgia as one of Dempsey's severe impairments or explicitly address fibromyalgia in evaluating Dempsey's subjective complaints of pain or in assessing her RFC.

In determining Dempsey's RFC, the ALJ gave "significant evidentiary weight" to the findings and conclusions of another of Dempsey's treating physician, Dr. Rachelle Janush, "as set out in her August 18, 2008 PCE [Physical Capabilities Evaluation] form." The ALJ noted that "Dr. Janush's assessment of the claimant's physical capacities and limitations are consistent with her own examination findings and with those of other examining or treating physicians" and that Dr. Janush, as a pain management specialist, was "well qualified to evaluate the claimant's impairments and form conclusions regarding her symptoms, conditions, and resulting limitations." The ALJ did not, however give significant weight to Dr. Janush's opinion, contained in her August 18, 2008 Physical Residual Function Capacity ("PRFC") Questionnaire, that Dempsey would miss more than four days of work per month due to her impairments and treatment. The ALJ explained that this particular finding was not supported by Dr. Janush's treatment notes. The ALJ did not address Dr. Janush's opinion, also in the PRFC Questionnaire, that Dempsey's pain and other symptoms would frequently interfere with the attention and concentration needed to perform even simple tasks. The ALJ acknowledged that Dr. Janush rendered her 2008 opinions almost two years after Dempsey's September 30, 2006 last insured date, but observed that Dr. Janush's opinions were generally consistent with the medical

4

reports and records from before 2006.

The Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. See Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002). On judicial review, the magistrate judge entered an order affirming the Commissioner's decision.[2] Dempsey filed this appeal.

## II. DISCUSSION

### A. Five-Step Sequential Evaluation

An ALJ uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work;[3] and (5) if not, whether,

---

[2]The parties consented to proceeding before the magistrate judge.

[3]Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a). RFC includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure. Id. § 404.1545(b)-(c). The ALJ's finding as to a claimant's RFC is based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do her past relevant work or any other work. Id. § 404.1545(a)(1), (5).

in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.  See 20 C.F.R. § 404.1520(a)(4), (c)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  If the claimant proves that she cannot do her past relevant work at the fourth step, the burden shifts to the Commissioner to show, at the fifth step, that the claimant can perform other work available in the economy.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

## B.    Dempsey's Claim

On appeal, Dempsey argues that the ALJ erred when he failed to address at step four: (1) Dr. Janush's opinion in her PRFC Questionnaire that Dempsey's pain symptoms would interfere frequently with her ability to attend and concentrate; and (2) the opinion of Dr. Ben Smith, another treating physician, in an undated application for disability access parking privileges that Dempsey was severely limited in her ability to walk.[4]

"It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the

---

[4]In social security appeals, our review is limited to whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Under this limited standard of review, we may not make findings of fact, reweigh the evidence or substitute our judgment for that of the Commissioner.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  We will reverse, however, if the ALJ fails to apply the correct legal standards or fails to provide sufficient reasoning to allow us to determine that the proper legal standards were applied.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

contrary." Crawford, 363 F.3d at 1159 (quotation marks omitted); see also 20 C.F.R. § 404.1527(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. The ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Moreover, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. § 404.1527(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion).

A general statement that the ALJ carefully considered all the testimony and exhibits is not sufficient. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Without an explanation of the weight the ALJ accorded the different medical opinions, it is not possible for us to determine whether the ultimate decision on the merits is rational and supported by substantial evidence. Id. Therefore, when the ALJ fails to state "with sufficient clarity" the grounds for his evidentiary decisions, we will not affirm "simply because some rationale might

7

have supported the ALJ's conclusion," and instead remand "for further findings at the administrative hearing level." Owens v. Heckler, 748 F.2d 1511, 1514-16, 1516 (11th Cir. 1984) (involving ALJ's failure to explain credibility finding); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (involving ALJ's failure to mention treating physician's opinion).[5]

In determining Dempsey's RFC, the ALJ explicitly addressed, and gave significant weight to Dr. Janush's opinions in her PCE form. The ALJ discounted one of Dr. Janush's opinions in her PRFC Questionnaire, that is, the number of days of work per month Dempsey would miss due to her impairments. The ALJ explained that this particular opinion was not supported by Dr. Janush's own treatment notes. However, the ALJ said nothing about the rest of the three-page PRFC Questionnaire, which included Dr. Janush's opinion that Dempsey's experience of pain and other symptoms were severe enough to frequently interfere

---

[5]We recognize that in MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986), this Court concluded that the Commissioner must accept as true a treating physician's opinion if the Commissioner ignored or failed to properly refute it. Our earlier precedent, however, remanded cases in which the ALJ failed to adequately explain the weight given doctors' opinions. See, e.g., Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985); Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982). To the extent MacGregor is inconsistent, under the prior panel precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting en banc or the Supreme Court. United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1986) (en banc). Thus, rather than accept the ignored treating doctor's opinion as true and remand for the award of benefits, we remand to the agency to determine in the first instance the proper weight to be afforded the treating doctor's opinion.

with the attention and concentration needed to perform even simple work tasks. And, the ALJ stated in his RFC finding that Dempsey had not had "significant work-related mental limitations," which is inconsistent with Dr. Janush's opinion.

The ALJ erred when he failed to mention, much less consider, Dr. Janush's opinion of Dempsey's ability to concentrate. Dr. Janush's opinion is contrary to the ALJ's finding in his RFC assessment that Dempsey had no significant mental limitations.[6] Thus, it is possible the ALJ did not give this opinion significant weight. If the ALJ considered and discounted Dr. Janush's opinion as to Dempsey's ability to concentrate, however, he provided no explanation for the weight, or lack thereof, that he assigned to it. Without a clear explanation of the ALJ's treatment of Dr. Janush's opinion, we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence.

The Commissioner argues that Dr. Janush's opinion was rendered two years after Dempsey's last insured date and there is no specific medical evidence that Dempsey had mental limitations during the period she was insured. However, the ALJ did not offer this explanation in his decision. We cannot affirm based on a

---

[6]Whether or not Dempsey has an inability to concentrate is significant because the vocational expert testified that an individual with all of Dempsey's physical limitations whose pain and other symptoms would interfere with the attention and concentration needed to perform simple work tasks would be precluded from performing any work.

9

post hoc rationale that "might have supported the ALJ's conclusion." See Owens, 748 F.2d at 1516.[7] On remand, the ALJ must explicitly consider and explain the weight accorded to Dr. Janush's opinion as to the effect of Dempsey's pain and other symptoms on her ability to concentrate.

Dempsey correctly points out that the ALJ also failed to address Dr. Smith's certification in Dempsey's application for disability access parking privileges that Dempsey was "severely limited in her ability to walk due to an arthritic, neurological, or orthopedic condition." Although the Commissioner offers reasons for disregarding Dr. Smith's opinion, those reasons were not given by the ALJ, who never mentioned the application.

In addition, the ALJ did not address Dempsey's fibromyalgia in evaluating her subjective complaints of pain or her ability to perform her past relevant work. The ALJ must consider all of the claimant's impairments, including non-severe impairments, in assessing the claimant's RFC. 20 C.F.R. § 404.1545(a)(2); see also Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (explaining that the ALJ must consider the claimant's "medical condition taken as a whole" at steps

---

[7]We also reject the Commissioner's argument that the ALJ's failure to address Dr. Janush's opinion was harmless because Dr. Janush did not examine Dempsey until after the date she was last insured. Absent good cause, a treating physician's opinion is entitled to substantial weight even if the physician did not treat the claimant during the relevant period of time. See Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983).

three, four and five of the sequential process). This Court has concluded that remand is required where the ALJ "fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001). Although Dempsey's fibromyalgia and its symptoms appear in her doctors' treatment notes beginning as early as 1997, the ALJ did not discuss fibromyalgia. Instead, the ALJ's evaluation of Dempsey's pain complaints and RFC focused on Dempsey's pain caused by her lumbosacral spinal stenosis and cervical spine surgeries.

Thus, on remand, in addition to Dr. Janush's opinion, the ALJ shall address Dr. Smith's statement in the disability access parking privileges application and shall consider Dempsey's fibromyalgia and its symptoms in evaluating Dempsey's subjective complaints of pain and the effects, if any, on her residual functional capacity.[8]

Accordingly, we reverse the district court's judgment and remand the case with instructions that it be returned to the Commissioner for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[8]We remand so that the ALJ may explicitly consider the treating physicians' opinions and Dempsey's fibromyalgia and express no opinion on the merits of Dempsey's claim for benefits.