[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15398
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-01035-AJB

VICTORIA IORDAN,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 2, 2014)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Victoria Iordan, a 47 year-old female with carpal tunnel syndrome, appeals the district court's order affirming the Social Security Administration's denial of her application for disability insurance benefits, 42 U.S.C. § 405(g). Iordan argues that the Administrative Law Judge ("ALJ") erred by improperly focusing on the medical evidence while ignoring opinion testimony, finding that she was at least partially not credible when testifying about her disability, and failing to properly address the lay testimony at the hearing. We will address each point in turn.

## I. Medial Opinion Evidence

We normally review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotations omitted). We "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* The individual seeking Social Security disability benefits bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

We review the Commissioner's legal conclusions *de novo*. *Id.* When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

2

The Commissioner uses

> a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178.  The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments."  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The ALJ considers all of the evidence in the record in determining the claimant's RFC. *Id.*

The claimant bears the burden of proving that she is unable to perform her past relevant work, and if she meets that burden, the Commissioner bears the burden of determining whether there is other work available at the fifth step.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Commissioner may show "that the claimant can perform other jobs . . . through the testimony of a VE."  *Id.* at 1229.  "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id.*

3

"[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (*per curiam*). Good cause for giving less weight to a treating physician's opinion exists where evidence supported a contrary finding or the physician's opinions were conclusory or inconsistent with his own medical records. *Phillips*, 357 F.3d at 1241.

Moreover, because non-examining physicians have no examining or treating relationship with the claimant, "the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). In addition, "the more consistent an

opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." *Id.* § 404.1527(c)(4).

In Iordan's Residual Functional Capacity Assessment ("RFC"), Dr. Lesesne concluded, contrary to the earlier determinations of her treating physicians, that she was capable occasionally lifting 50 pounds and frequently lifting 25 pounds, and only noted that handling and grasping should be limited to occasional occurrences and that pushing and pulling should be limited. Dr. Render supported these conclusions. Iordan's treating physicians, on the other hand, determined that she was limited to lifting 10 or 20 pounds between the onset of her impairment and her last date insured, although they did concur regarding her limitations in gripping and grasping. Contrary to Iordan's argument, however, the ALJ considered the state agency medical consultants' opinions, but included Iordan's gripping and grasping limitations as well as the more restrictive lifting limitations in its hypothetical to the vocational expert, rather than the greater strength capacity indicated in the initial RFC. The ALJ incorporated the only portions of the non-treating physicians' opinions that were supported by the record in its RFC determination, stating that the other conclusions were unsupported by the record, providing sufficient clarity for its refusal to adopt the non-treating physicians' opinions. *Owens*, 748 F.2d at 1516; 20 C.F.R. § 404.1527(c)(4). Contrary to Iordan's argument, Drs. Lesesne's and Render's assessments did not provide good

5

cause for the ALJ to set aside the opinions of Iordan's treating physicians; therefore the ALJ did not err in its consideration of the medical opinion evidence. *Phillips*, 357 F.3d at 1241.

## II. Credibility Determination

When a claimant attempts to establish disability through her own testimony concerning pain, we apply a "pain standard" test requiring a showing of: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 404.1529 (discussing how the ALJ evaluates a claimant's symptoms). The "pain standard" is applicable to other subjective symptoms as well. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective symptom testimony is "critical" to the claim. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also Moore*, 405 F.3d at 1212 ("[This Court] recognize[s] that credibility determinations are the province of the ALJ."). "The credibility determination does

6

not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . this Court to conclude that the ALJ considered [the] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotations and alterations omitted).

The ALJ reviewed Iordan's post-surgical records, noting that, according to her own report to Dr. Costas, her carpal tunnel syndrome symptoms essentially resolved seven months after her second surgery, that her strength had returned, and that she reported only occasional pain, stiffness, and grip issues in her left hand to Dr. Quisling in 2000, while demonstrating no evidence of carpal tunnel syndrome. The record does not include any documentation indicating that her symptoms returned between 2000 and her last insured date in 2004, indicating that her testimony at the hearing reporting that she still had pain and discomfort in both hands in 2004 was not entirely credible. *Wilson*, 284 F.3d at 1225; 20 C.F.R. § 404.1529. Prior to her last insured date, she had no work limitations placed on her regarding gripping and pinching after her surgery, because the only restrictions were those preventing her from using torque or vibrating tools and mist, she had a full range of motion in both hands, and both the nerve conduction study and electromyogram in 2002 were normal. The evidence the ALJ cited in making its credibility determination demonstrated that the pain and grip problems she alleged at the hearing were not supported by medical records, whereas the records support

the credibility finding itself.  *Foote*, 67 F.3d at 1562.   Accordingly, we affirm in this respect.

### III. Lay Evidence

"It is well-established that the ALJ has a basic duty to develop a full and fair record."  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  Consequently, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts."  *Cowart*, 662 F.2d at 735.  The ALJ must consider all of the impairment evidence presented at the hearing, stating the weight accorded to each item and the reasons for accepting or rejecting the evidence.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).

Remand is unnecessary when it would amount to a waste of judicial resources in the face of an ample record.  *See Judd v. Haley*, 250 F.3d 1308, 1318-19 (11th Cir. 2001) (*citing Perkins v. Matthews,* 400 U.S. 379, 386-87, 27 L. Ed. 2d 476, 91 S. Ct. 431 (1971) ("in the interest of judicial economy, we shall not remand to the district court [because the] record is adequate to enable us to decide the issue on appeal , and we shall, therefore, decide this question")).

At the hearing, testimony by Brinson, Iordan's fiancée, concerned only her grip and lifting issues associated with her carpal tunnel impairment, and it was either duplicative of or contradictory to her testimony and assessments made by her treating physicians, who made objective assessments of her gripping and lifting

capabilities.  Contrary to Iordan's arguments in her brief and before the district court, Brinson did not provide any evidence regarding the onset of her impairment, nor could he have, because he first met her in 1999, at least a year after her symptoms began.  Accordingly, Brinson did not offer any new or relevant impairment evidence, and the ALJ did not err in failing to explicitly address his testimony in its written decision, in which the fact of his testimony was noted. *Cowart*, 662 F.2d at 735; *Lucas*, 918 F.2d at 1574.  Finally, remanding this case solely to require the ALJ to explicitly address Brinson's testimony would be a waste of judicial resources, because his statements did not undermine the substantial medical evidence supporting the ALJ's disability determination. *See Judd*, 250 F.3d at 1318-19.  As such, we affirm the district court's judgment and the Social Security Administration's decision that Iordan was not disabled.

    **AFFIRMED.**