[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16160
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00644-WSD


TESSIE LYNN GLOVER,

Plaintiff-Appellant,

versus

CAROLYN W. COLVIN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 1, 2017)

Before ED CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

In 2008 Tessie Lynn Glover filed an application for disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3), due to her inability to work based on a disabling condition.  Before her purported disability onset date of August 30, 2005, Glover had worked as a bill maker, dough mixer, driver, medical van driver, packing line attendant, customer service representative, and stocker.  After the Social Security Administration denied her application and her request for reconsideration, she requested a hearing before an administrative law judge (ALJ).

The ALJ conducted a hearing on Glover's claims and denied her application for benefits.  Glover appealed that decision and the Appeals Council granted her request for review, vacated the ALJ's decision, and remanded the case to the ALJ to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Glover]'s occupational base."  On remand, the ALJ conducted a second hearing and later issued a decision denying Glover benefits.  The Appeals Council denied her request for review, and the district court affirmed the ALJ's denial of her request for benefits.  This is Glover's appeal.

A claimant must be disabled to be eligible for disability insurance benefits and supplemental security income.  42 U.S.C. §§ 423(a)(1)(E), 1382(a).  The ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  During the last two

2

steps of the process, an ALJ considers the claimant's residual functional capacity, see id., which is "the most [a claimant] can still do despite [her] limitations," id. § 404.1545(a)(1). In considering the claimant's residual functional capacity the ALJ looks at medical and other relevant evidence in the record. Id. § 404.1545(a)(3). If the ALJ finds that the claimant can still do her past relevant work, then the claimant is not disabled. Id. § 404.1520(a)(4)(iv). If, however, the ALJ finds that the claimant cannot still do her past relevant work, the ALJ must decide whether the claimant "can make an adjustment to other work," considering her residual functional capacity as well as her "age, education, and work experience." Id. § 404.1520(a)(4)(v). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

Glover contends that substantial evidence does not support the ALJ's finding as to her residual functional capacity, asserting that the ALJ failed to address certain findings made by consultative physicians Dr. Clancy and Dr. Cunanan. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Id. at 1179. When deciding how much weight to give a medical opinion, the ALJ should consider certain factors, including the consistency of the opinion with the record as a whole as well as the evidence and

explanation supporting the opinion.  20 C.F.R. § 404.1527(c).  "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"  Winschel, 631 F.3d at 1179 (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)).  The ALJ, however, is not required to discuss every piece of evidence so long as the decision shows that he considered the claimant's medical condition as a whole.  See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

Dr. Clancy performed a consultative examination of Glover and, among other things, offered an opinion that "[r]eliability is likely to be a problem due to mood instability and lack of motivation" and that Glover "would be able to handle low to moderate stress, but would eventually decompensate with prolonged moderate stress."  Dr. Clancy also opined that Glover "should be able to understand and follow simple instructions, although she may be slower than normal in this process."

The ALJ, in assessing Glover's residual functional capacity, gave significant weight to Dr. Clancy's opinion, finding that Glover was "limited to simple instructions" with "no more than occasional interactions with the public."  While Glover contends that the ALJ failed to account for Dr. Clancy's opinion about her reliability, Dr. Clancy did not express that opinion in terms of how it would limit

Glover's ability to work.  As for Dr. Clancy's opinion that Glover "should be able to handle low to moderate stress, but would eventually decompensate with prolonged moderate stress," the ALJ took that opinion into account by limiting Glover to not more than occasional contact with the public.  Finally, the ALJ's residual functional capacity assessment included Dr. Clancy's finding that Glover "has the ability to adequately follow and recall simple directions, but has some difficulty as they become more detailed."  And even though Dr. Clancy noted that Glover "may be slower than normal" in understanding and following simple instructions, Dr. Clancy never indicated that she would be unable to do so.  As a result, the ALJ sufficiently addressed Dr. Clancy's findings and opinions.

Glover also contends that the ALJ failed to consider certain parts of Dr. Cunanan's opinion.  In his decision the ALJ detailed Dr. Cunanan's medical opinions and found that "[a]lthough the evidence and examination notes do not support Dr. Cunanan's opinion that [Glover] has a poor to fair prognosis to work[,] . . . the remainder of his report and opinions are consistent with the treatment records [and] the limitations provided in exertional activities such as lifting, standing, sitting and walking are afforded great weight."

Glover asserts that the ALJ failed to acknowledge Dr. Cunanan's opinion that she "might have difficulty adhering to work schedules and meeting production norms because of arthralgias, abdominal pain, and mental issues."  That opinion,

5

however, formed the basis of Dr. Cunanan's conclusion that Glover "has a poor to fair prognosis to work," which the ALJ found was not supported by the evidence. As a result, the ALJ did not ignore Dr. Cunanan's opinion that Glover may have difficulty with work schedules and meeting production norms. He instead found that opinion, and the conclusion it led to, unsupported by the evidence.

Finally, Glover contends that substantial evidence did not support the ALJ's finding that she can adjust to other work because the ALJ erroneously relied on the vocational expert's testimony, which was based on an incomplete hypothetical question. See Winschel, 631 F.3d at 1180 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). Glover asserts that the ALJ's hypothetical question was incomplete because it took into account only the impairments found as part of her residual functional capacity and did not include the limitations provided in Dr. Clancy's and Dr. Cunanan's opinions. As we have already discussed, however, the ALJ incorporated most of those limitations into the residual functional capacity finding and he rejected the remaining limitations as unsupported or unrelated to Glover's ability to work. And the ALJ was not required to formulate a hypothetical that included findings he had rejected as unsupported. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004). The ALJ's hypothetical to the vocational expert included

6

all of Glover's impairments that were supported by the record, and substantial evidence supported the finding that Glover can make an adjustment to other work.

**AFFIRMED.**