[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-14251

Non-Argument Calendar

_____

CHRISTOPHER MICHAEL WHEELER,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-00187-MAP

_____

Before JILL PRYOR, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Christopher Wheeler appeals the district court's judgment affirming the Social Security Commissioner's denial of his applications for supplemental security income benefits. The administrative law judge (ALJ) who denied Wheeler's applications stated that she gave great weight to the opinions of William W. Austin, a consulting psychologist, about how Wheeler's mental impairments impacted his ability to perform work-related activities on a sustained basis. But she adopted a residual functional capacity assessment that conflicted with Austin's opinions. We conclude that the ALJ failed to comply with a Social Security Ruling that provides that when an ALJ's assessment of a claimant's residual functional capacity conflicts with an opinion from a medical source, the ALJ must explain why the medical source's opinion was not adopted. Because the ALJ rejected Austin's opinions without explanation, we reverse the judgment of the district court and remand with instructions for the district court to remand to the Commissioner.

## I.

In 2012, Wheeler initially applied for supplemental security income benefits. After an evidentiary hearing, ALJ Kristi Barlow concluded that Wheeler was not disabled and denied his application.

The ALJ used the five-step sequential evaluation framework to evaluate whether Wheeler was disabled. At the first step, she

found that Wheeler had not engaged in substantial gainful activity since September 2012. At the second step, she found that Wheeler suffered from the severe impairments of seizures and degenerative disc disease. At the third step, she determined that Wheeler did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

The ALJ then assessed Wheeler's residual functional capacity. She found that he could perform light work so long as there were also restrictions on how often he kneeled, crouched, crawled, climbed ramps or stairs, stooped, climbed ladders, or was exposed to vibrations or hazards. At step four, she concluded that given this residual functional capacity, Wheeler could not perform his past relevant work.

At step five, the ALJ determined that given Wheeler's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. She explained that if Wheeler had the capacity to perform a full range of light work, he would not be disabled. She acknowledged that Wheeler had some limitations that prevented him from performing the full range of light work. But she nevertheless concluded that he remained able to perform "a significant number of unskilled jobs." Doc. 18-3 at 14.[1] She reached this conclusion even though no vocational expert testified and opined about what jobs would be available to a hypothetical person

---

[1] "Doc." numbers refer to the district court's docket entries.

of Wheeler's age, education, and work experience with similar limitations.[2]

In 2016, Wheeler filed a complaint in federal district court, seeking review of the Commissioner's decision denying benefits. The district court concluded that there was not substantial evidence in the record to support the ALJ's conclusion that there were jobs that existed in significant numbers in the national economy that Wheeler could perform. The court remanded the case to the Commissioner for further consideration.

Around the same time that Wheeler sought review in the district court, he filed a second application for supplemental security income benefits with the Social Security Administration. In February 2019, the Appeals Council entered an order regarding both of Wheeler's applications. Based on the district court's order, it vacated the ALJ's decision denying Wheeler's 2012 application. And it explained that Wheeler's 2016 application also was pending. It directed that on remand, an ALJ should consolidate the two applications and issue a single decision addressing both.

On remand, Wheeler's applications were assigned to ALJ Randolph Allen. In May 2019, after another hearing, the ALJ issued a decision finding that Wheeler was not disabled as of July 2016, the date of his second application. This decision did not discuss

---

[2] After the ALJ determined that Wheeler was not disabled, the Appeals Council denied review.

Wheeler's 2012 application or address whether he was disabled during the time between filing his first and second applications.

Wheeler sought review of the May 2019 ALJ decision from the Appeals Council. In 2021, the Appeals Council vacated that decision. It concluded that the ALJ had failed to comply with its earlier remand order because he failed to adjudicate both of Wheeler's applications. The Appeals Council again remanded the case, directing an ALJ to "[f]urther evaluate" both of Wheeler's applications. *Id.* at 90. It instructed the ALJ to offer Wheeler "an opportunity for a hearing, take any further action needed to complete the administrative record[,] and issue a new decision." *Id.*

Upon remand, the case was assigned back to ALJ Barlow who held a new evidentiary hearing. The record before the ALJ included Wheeler's testimony and his medical records. The medical records included opinions from several consulting medical examiners. We briefly discuss the opinions that are relevant to the issues before us in this appeal.

In 2021, Wheeler was referred to Austin, a psychologist, for a clinical evaluation with mental status examination. It appears that Wheeler performed the examination together with Carolyn Yonfa, another psychologist.

After the examination, Yonfa prepared a report. She diagnosed Wheeler with major depressive disorder and a mild neurocognitive disorder due to grand mal seizures. She noted that Wheeler reported feeling depressed and frustrated with the physical limitations that he faced due to his seizures and pain. Because

of his frequent seizures, Wheeler did not drive or leave his home and needed substantial assistance around the house. After a seizure, Wheeler often had a headache, felt foggy, and had memory problems. He told Yonfa that he was scared to leave his home because if he had a seizure around others, he usually ended up in the hospital. Upon examination, Yonfa found that Wheeler had some impairment in memory functioning. She opined that Wheeler's social functioning and functional ability also were impaired, noting his "lack of interactions with peers" as well as his "symptoms of depression and memory deficits," respectively. Doc. 18-7 at 139.

After the examination, Austin completed a Social Security Administration form regarding the limitations that Wheeler faced because of his mental impairments. The form asked Austin to rate whether Wheeler had extreme, marked, moderate, mild, or no limitations in various activities. The form instructed that a limitation is mild if there is a "slight limitation in this area, but the individual can generally function well"; moderate if there is "more than a slight limitation in this area, but the individual is still able to function satisfactorily"; marked if there is a "serious limitation" that causes a "substantial loss in the ability to effectively function"; and extreme if there is a "major limitation" and "no useful ability to function in [an] area." *Id.* at 140.

Austin opined that Wheeler's impairments affected his ability to understand, remember, and carry out instructions. He found that Wheeler had marked limitations in carrying out simple and complex instructions and mild limitations in making judgments on

simple or complex work-related decisions as well as in understanding and remembering complex instructions.

Austin also assessed how Wheeler's impairments affected his ability to interact appropriately with supervisors, coworkers, and the public, as well as to respond to change in a routine work setting. He concluded that Wheeler had moderate limitations in each of the following areas: interacting appropriately with supervisors, interacting appropriately with coworkers, interacting appropriately with the public, and responding appropriately to usual work situations and to changes in a routine work setting.

The record before the ALJ also included testimony from a vocational expert. The vocational expert opined what jobs a hypothetical person could perform if he had a high school education, was limited to sedentary work, could not climb, could not have exposure to vibrations or hazards, could occasionally stoop, could perform only simple and routine tasks, and could not interact with the general public. The vocational expert opined that this person could perform the jobs of document scanner, lens inserter, or final assembler. The vocational expert was not asked whether a person would be able to perform these jobs if he also had limitations in interacting with supervisors or coworkers.

In November 2021, the ALJ issued a decision denying both of Wheeler's applications. After applying the five-step sequential evaluation framework, she determined that Wheeler was not disabled from September 2012—when he filed his first application—through the date of her decision. At the first step, she found that

Wheeler had not been engaged in substantial gainful activity. At the second step, she concluded that Wheeler suffered from several severe impairments including seizure disorder, degenerative disc disease, and major depressive disorder with mild neurocognitive disorder. At the third step, she determined that Wheeler did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

The ALJ then assessed Wheeler's residual functional capacity. She concluded that he could engage in sedentary work with certain limitations. These limitations included no climbing, no concentrated exposure to vibrations and/or hazards, and only occasional stooping. The ALJ also determined that "[m]entally, the claimant is limited to simple and routine tasks consistent only with unskilled work that require no exposures to, or interactions with, the general public." Doc. 18-2 at 9.

In assessing Wheeler's residual functional capacity, the ALJ discussed the weight to give to the medical opinion evidence in the record, including Austin's opinions. After reciting each aspect of Austin's opinions about the effect of Wheeler's mental impairments, she stated that she gave them "great weight." *Id.* Although Austin determined that Wheeler had moderate limitations in interacting with supervisors and coworkers, the ALJ did not incorporate these limitations into her assessment.

Based on her residual functional capacity assessment, the ALJ determined at step four that Wheeler was not able to perform his past relevant work. But at step five she concluded that given his

age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that Wheeler could perform, including scanner, lens inserter, and final assembler. She thus determined that Wheeler was not disabled during the period covered by his two applications.

Wheeler filed an action in district court challenging the Commissioner's decision. The district court affirmed. This is Wheeler's appeal.

## II.

We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Our limited review precludes us from "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.*

## III.

Under the Social Security Act, a disabled individual may be eligible for social security income benefits. 42 U.S.C. § 1382(a). An individual is considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A).

The Social Security Administration uses a five-step process to determine whether a claimant is disabled. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The agency considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether he can perform his past relevant work in light of his residual functional capacity; and (5) if not, whether, based on his age, education, residual functional capacity, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 416.920(a)(4).

At step four of this framework, an ALJ must assess a claimant's residual functional capacity, which is defined as the most the claimant can do despite his limitations. *Id.* § 416.945(a)(1). In assessing residual functional capacity, the ALJ must consider all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2). In assessing a claimant's mental abilities, the ALJ must "first assess the nature and extent" of the claimant's "mental limitations and restrictions" and "then determine [his] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 416.945(c). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions" or "in responding appropriately to supervision, coworkers, and work pressures in a work setting" may reduce a claimant's ability to perform work. *Id.*

In assessing a claimant's residual functional capacity, an ALJ must "consider and address medical source opinions." *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).[3] When the ALJ's residual functional capacity assessment "conflicts with an opinion from a medical source," she must "explain why the opinion was not adopted." *Id.* If the ALJ fails to provide an explanation, we cannot determine whether substantial evidence supported the ALJ's decision and must remand for further proceedings. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (remanding where ALJ failed to "state with at least some measure of clarity the grounds for his decision") *see also Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) ("Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.").

Here, the ALJ's assessment of Wheeler's residual functional capacity conflicted with opinions from a medical source—Austin. Austin opined, among other things, that Wheeler had moderate limitations in interacting with supervisors and coworkers. Although the ALJ stated that she gave Austin's opinions great weight, she did not find that Wheeler had any limitations in interacting with supervisors or coworkers. Because this assessment conflicted with Austin's opinions, under SSR 96-8p the ALJ was required to

---

[3] Medical source opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

explain and address the conflict. Because she failed to do so, we must reverse and remand. *See Owens*, 748 F.2d at 1516.

The Commissioner suggests that the ALJ did not err because she "reasonably viewed . . . Austin's opinion as consistent with her [residual functional capacity] assessment." Appellee's Br. 23. The Commissioner says that because Austin opined that Wheeler had moderate, as opposed to extreme or marked, limitations in the areas of interacting with supervisors or coworkers, there was no conflict between Austin's opinions and the ALJ's assessment that Wheeler had no limitations in these areas. We disagree. The Commissioner has not cited any case holding that there is no conflict when an ALJ determines that a claimant has no limitations in a particular area after a medical source opined that the claimant's impairment caused moderate limitations in that area. Moreover, the Commissioner's argument overlooks our recognition that an ALJ generally must account for a medical source's opinion that a claimant's mental impairment caused moderate limitations. *See Winschel*, 631 F.3d at 1180–81 (concluding that an ALJ erred by failing to incorporate determination that claimant's mental impairments caused moderate limitations in maintaining concentration, persistence, and pace).[4]

---

[4] Consistent with *Winschel*, our sister circuits have likewise recognized that an ALJ generally must account for a medical source's opinion that a claimant's mental impairments caused moderate limitations. *See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that "a moderate impairment is not the same as no impairment at all" and an ALJ may not simply "pick and

The Commissioner also argues that the ALJ did not err because other evidence in the record could have supported a determination that Wheeler's mental impairments were limited to performing simple and routine tasks consistent with unskilled work and having no exposure to or interaction with the general public and thus a rejection of Austin's opinions that Wheeler also had limitations in interacting with supervisors or coworkers. But we may not affirm on the basis that the Commissioner has now put forth a rationale that could support the ALJ's decision. Instead, we are limited to reviewing the reasoning in the ALJ's decision. *See Owens*, 748 F.2d at 1516 (explaining that we may not affirm "simply because some rationale might have supported the ALJ's decision" and noting that "[s]uch an approach would not advance the ends of reasoned decision making" (footnote omitted)).

Because the ALJ's decision included no explanation why she did not adopt Austin's opinions regarding Wheeler's limitations in interacting with supervisors or coworkers, remand is appropriate. To be sure, on remand, the ALJ is not required to accept Austin's

---

choose through an uncontradicted medical opinion," rejecting some moderate restrictions without explanation while accepting others); *Craft v. Astrue*, 539 F.3d 668, 676–78 (7th Cir. 2008) (concluding that ALJ erred in assessing claimant's residual functional capacity when, among other things, the ALJ failed to address medical source's opinions that claimant's mental impairments caused moderate limitations in several areas).

14                    Opinion of the Court                    22-14251

opinions about Wheeler's limitations. But if the ALJ does not adopt Austin's opinions, she must explain why.[5]

### IV.

For the reasons set forth above, we reverse the judgment of the district court and remand with instructions to remand to the Commissioner.

**REVERSED** and **REMANDED**.

---

[5] In his appeal, Wheeler raised two other issues, arguing that: (1) the ALJ failed to comply with the Appeals Council's remand order because the record before the ALJ was missing several documents, including some medical records and the Appeals Council's 2019 remand order; and (2) the Commissioner erred in reassigning the case to ALJ Barlow because she had not been properly appointed at the time she issued the first decision in this case, which the district court later vacated. Because we conclude that vacatur and remand is warranted based on the ALJ's failure to explain why she rejected aspects of Austin's opinions, we do not reach the merits of these issues.