[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16272
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-01054-RDP


BARBARA GREEN,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 27, 2017)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Claimant Barbara Green appeals the district court's order affirming the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits.  On appeal, Green argues that the Appeals Council erred by denying her request for review of the ALJ's denial of benefits without considering her new evidence.  She also challenges the ALJ's determination that her subjective complaints regarding the limiting effects of her impairments were not entirely credible.  After careful review, we affirm.

## I.    BACKGROUND

In 2012, Green applied for disability insurance benefits with the Social Security Administration.  Alleging a disability onset date of September 10, 2010, Green represented that she was disabled and unable to work due to high blood pressure, fibromyalgia, arthritis, lupus, and panic and anxiety attacks.  She was laid off from her previous job because she was unable to keep up with the demand of the production line and her medication affected her ability to concentrate.  The Commissioner of Social Security ("the Commissioner") denied Green's application for benefits.

At a subsequent hearing before the ALJ, Green explained that she could not work due to cancer, fibromyalgia, high blood pressure, depression, Lupus, and panic and anxiety attacks.  She testified that she has trouble sleeping and she mostly watches television.  She usually watches short films or reads magazines

2

because her chemotherapy treatments had affected her short-term memory.  She does some light dusting but does not vacuum or sweep.  She spends the majority of her day lying down.  She explained that she was laid off from her previous job because she made a lot of mistakes and couldn't keep up due to her medication.

The ALJ also heard testimony from a vocational expert.  The vocational expert explained that Green had past relevant work as a sewing machine operator, a molder trimmer, a spinner, a cashier, a fast food worker, and a waitress.  Based on Green's age, education, past work experience, and physical limitations, Green would not be able to perform her past relevant work but would be capable of performing work as a tagger, an inspector, and a garment folder.  Those jobs would be available with a sit/stand option.  The ALJ asked whether there were any sedentary jobs that would account for Green's limitations.  The vocational expert stated that Green would be capable of performing the job of an addressing clerk, a table worker, and an inspector.

Following the hearing, the ALJ issued a decision on November 22, 2013, concluding that Green was not disabled for purposes of disability insurance benefits.  The ALJ determined that Green suffered from fibromyalgia, degenerative disc disease cervical spine, obesity, hypertension, status post lumpectomy, generalized anxiety disorder, and depression, but that these impairments did not meet or equal any of the listed impairments in the Social Security Administration

3

regulations.  The ALJ further concluded that Green had the residual functional capacity to perform sedentary work with additional limitations, including but not limited to a sit/stand option at will, occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders or working at unprotected heights.  Green was restricted to simple, routine, repetitive tasks, as well as occasional interaction with the public and she required minimal changes in the work setting.  Based on this finding, in conjunction with the Medical-Vocational Guidelines and the vocational expert's testimony that an individual with Green's limitations could perform work as an addressing clerk, table worker, and inspector, the ALJ concluded that jobs existed in significant numbers in the national economy that Green could perform.  Accordingly, the ALJ determined that Green was not disabled.

Green thereafter sought review of the ALJ's decision from the Appeals Council.  She submitted additional medical records dated between January 2014 and August 2014, as well as treatment notes from Dr. Wyndol Hamer, who she began seeing for fibromyalgia and chronic pain in December 2013.  The Appeals Council denied Green's request for review.  The Appeals Council noted that Green's new evidence was dated after the ALJ's November 2013 decision, and therefore did not affect the decision regarding whether she was disabled beginning on or before November 22, 2013.

4

In June 2015, Green, represented by counsel, filed a complaint in the district court challenging the ALJ's denial of disability insurance benefits. She argued in relevant part that the Appeals Council failed to adequately consider her new evidence and that the ALJ's credibility determination was not supported by substantial evidence. The district court affirmed the Commissioner's denial of disability insurance benefits. This appeal followed.

## II.    <u>DISCUSSION</u>

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted). We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

To establish eligibility for disability insurance benefits, the claimant must show that she was under disability on or before the last date for which she was insured. 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore*, 405 F.3d at 1211. In determining whether a claimant has proven that she is disabled, the ALJ must complete a five-step sequential evaluation process. *Jones v. Apfel*, 190 F.3d 1224,

1228 (11th Cir. 1999). The claimant has the burden to prove that (1) she "has not engaged in substantial gainful activity," (2) she "has a severe impairment or combination of impairments," and (3) her "impairment or combination of impairments meets or equals a listed impairment" such that she is entitled to an automatic finding of disability. *Id.* If the claimant is not able to meet or equal the criteria for a listed impairment, she must proceed to the fourth step, which requires showing that she is unable to do her past relevant work. *Id.* "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that she is unable to perform those jobs in order to establish that she is disabled. *Id.*

### A.    Appeals Council Review

Green argues that the Appeals Council erred by denying her request for review because it ignored her new evidence from Dr. Hamer without determining whether the evidence was chronologically relevant. She further asserts that the Appeals Council refused to consider Dr. Hamer's opinion expressed in the Physical Capacities Form solely because it was dated after the ALJ's decision and that the district court improperly provided a *post hoc* rationale for why the Appeals Council would have been justified in discounting the Physical Capacities Form.

6

Typically, a claimant may present new evidence at every stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Although the Appeals Council may decline to review the ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence" submitted by the claimant. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quotations omitted); 20 C.F.R. § 404.970(b) (2016).[1] The issue of whether a claimant's new evidence is new, material, and chronologically relevant is reviewed *de novo*. *Washington*, 806 F.3d at 1320–21. "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321.

Evidence is considered material when a reasonable possibility exists that the evidence would change the administrative result. *Id.* Evidence is chronologically relevant where "it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (2016). A medical examination that takes place after issuance of the ALJ's decision may be chronologically relevant if it relates back to the date of the ALJ's decision. *Washington*, 806 F.3d at 1322–23. In *Washington*, we concluded that a medical opinion based on treatment occurring after the ALJ's decision was chronologically

---

[1] This regulation was recently amended, effective January 17, 2017, to state that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2017).

relevant because it was based on (1) the claimant's experiences that had occurred during the time period before the ALJ's decision and (2) a review of the claimant's medical records from the time period prior to the ALJ's decision. *Id.*

In submitting her request for review of the ALJ's decision to the Appeals Council, Green submitted the following additional evidence: (1) a January 2014 bone density scan and (2) a February 2014 cervical spine MRI, showing a mild C5-6 posterior disc protrusion. She also submitted treatment notes from Dr. Hamer, whom she visited for the first time in December 2013, one month after the ALJ issued his decision. The Appeals Council denied Green's request for review. In doing so, the Appeals Council stated that it had looked at the additional evidence Green submitted—the 5 pages of medical records and 36 pages of treatment notes dated between December 2013 and August 2014—but that the new information related to a later time and therefore did not affect the decision of whether she was disabled beginning on or before the date of the ALJ's decision, November 22, 2013.

Here, Green's argument that that the Appeals Council ignored Dr. Hamer's treatment notes without considering whether they were chronologically relevant is not well taken. The Appeals Council did not ignore this evidence. Instead, it stated that it had looked at the evidence, but determined that it did not affect the ALJ's decision because it was from a later date. Although the Appeals Council did

8

not explicitly state that the additional medical evidence was not chronologically relevant, it implicitly did so and we agree with that conclusion. Dr. Hamer's treatment notes were dated after the ALJ's decision. Though the treatment notes mentioned that Green's symptoms had been present for one year, Dr. Hamer did not specify that his opinion applied to the time period before the ALJ's decision. Moreover, unlike our decision in *Washington*, there is no indication that Dr. Hamer's opinion was based on a review of Green's past medical records from before the date of the ALJ's decision. *See Washington*, 806 F.3d at 1322. Thus, the Appeals Council did not err by determining that the new evidence was not chronologically relevant.

Green also argues that the Appeals Council erred by refusing to consider the Physical Capacities Form that Dr. Hamer completed on May 30, 2014. The problem for Green is that it is not even clear that the form was before the Appeals Council. Green summarized the Physical Capacities Form in her brief to the Appeals Council, but the form is not included in the administrative record.[2] And while the Appeals Council did not reference the Physical Capacities Form, there is also no requirement that the Appeals Council discuss each piece of evidence when denying review. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784

---

[2] Green filed a motion in the district court to correct the record to include the Physical Capacities Form and attached the form to the motion. The district court granted the motion.

(11th Cir. 2014) (concluding that the Appeals Council is not required to discuss new evidence when denying review).

To the extent Green seeks a remand under 42 U.S.C. § 405(g) based on her submission of the Physical Capacities Form to the district court, she has not shown good cause for failing to make this evidence part of the administrative record. *See* 42 U.S.C. § 405(g) (The district court may remand to the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding."); *see Ingram*, 496 F.3d at 1268 ("We . . . have held that remand under sentence six [of § 405(g)] is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council.").

We next turn to Green's argument challenging the district court's determination that even if the Physical Capacities Form had been before the Appeals Council, the Appeals Council would have been justified in discounting Dr. Hamer's opinion because it was conclusory and not supported by objective medical evidence. Green argues that the district court's *post hoc* rationale for why the Appeals Council would have been justified in discounting Dr. Hamer's opinion was improper. To support her argument, Green relies on our decision in *Owens v. Heckler*, 748 F.2d 1511, 1516 & n.6 (11th Cir. 1984), in which we concluded that

10

the Appeals Council may not infer plausible reasons for an ALJ's conclusion where the ALJ failed to articulate its reasons for a decision.

Green's reliance on *Owens* is misplaced, however, because that decision refers to the Appeals Council providing reasons for an ALJ's decision, not the district court providing reasons for the Appeals Council's decision. *See id.* at 1516. This difference is important because, although an ALJ must articulate some basis for his decision, the Appeals Council does not need to provide a detailed explanation when it denies review. *See id.* at 1514–15 ("A clear articulation [by the ALJ] of both fact and law is essential to our ability to conduct a review that is both limited and meaningful."); *Mitchell*, 771 F.3d at 784 ("The Appeals Council . . . was not required to provide a detailed rationale for denying review.").

In short, Green has failed to show any reversible error.

## B.    Credibility Determination

Green next challenges the ALJ's determination that her subjective complaints were not entirely credible. To establish a disability based on subjective testimony of pain and other symptoms, the claimant must establish: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529.

We have determined that credibility determinations are within the province of the ALJ. *Moore*, 405 F.3d at 1212. However, if the ALJ rejects a claimant's subjective testimony regarding pain, the ALJ must articulate specific reasons for doing so. *Wilson*, 284 F.3d at 1225. Otherwise, the claimant's testimony must be accepted as true. *Id.* Although the ALJ need not cite to "particular phrases or formulations" to support the credibility determination, the ALJ must do more than merely reject the claimant's testimony, such that the decision provides a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (quotations omitted).

As an initial matter, Green asserts for the first time on appeal that her credibility should be assessed under the standard announced in Social Security Ruling 16-3p. Social Security Ruling ("SSR") 16-3p, which became effective March 28, 2016, provides guidance on "evaluat[ing] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 81 Fed. Reg. 14166, 14167 (Mar. 16, 2016). Of relevance, the ruling eliminates the term "credibility" from sub-regulatory policy and stresses that when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms." *Id.* at 14166, 14171. Although Green

argues that we should apply SSR 16-3p retroactively, she does not cite to any controlling authority for doing so.  Moreover, administrative rules are not generally applied retroactively.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law . . . administrative rules will not be construed to have retroactive effect unless their language requires this result.").  Because SSR 16-3p does not specify that it applies retroactively, and Green has not provided any authority showing that it applies retroactively, we decline to apply that standard here.

With that said, substantial evidence supports the ALJ's determination that Green's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Green testified that she was unable to work due to her fibromyalgia, high blood pressure, and panic and anxiety attacks.  She stated that her fibromyalgia causes a lot of pain and she spends approximately 85% of the day lying down.  The ALJ discredited her testimony, concluding that it was inconsistent with the medical record and Green's daily activities.

As noted by the ALJ, Green's medical visits were relatively infrequent and she had received primarily routine, conservative treatment for her conditions.  Moreover, Green's function reports show that she cares for her own personal needs, does light housework, prepares simple meals, drives, goes shopping, and visits with family and friends.  *See* 20 C.F.R. § 404.1529(c)(3) (indicating that the

ALJ looks at several factors, including the claimant's daily activities when evaluating the claimant's subjective symptoms).  Although Green alleged that her medications make her tired and make it difficult for her to concentrate, these side effects were not corroborated by her medical records.  Further, the ALJ noted that the record suggested that Green had stopped working for reasons other than her alleged disabilities, given that she was laid off from her job in September 2010 and had received unemployment benefits through April 2012.

Green's argument that the ALJ improperly drew an adverse inference from Green's lack of specialized medical treatment is unavailing.  "[W]hen an ALJ relies on noncompliance [with prescribed medical treatment] as the sole ground for denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015).

Here, even if we agreed with Green that the ALJ drew an adverse inference from the fact that she had not sought specialized treatment for her fibromyalgia or

back pain, Green cannot show reversible error.  Although the ALJ noted that Green had not sought specialized treatment, the ALJ also explained that Green's testimony was not entirely credible because it was inconsistent with the medical record and her reported daily activities.  *See Ellison*, 355 F.3d at 1275; *Henry*, 802 F.3d at 1268.  Further, Green' testimony regarding the side effects of her medication was not corroborated by the medical records, and the evidence suggested that she lost her job for reasons other than her alleged disabilities.  Given that the ALJ did not rely exclusively on Green's failure to seek specialized treatment when discrediting her testimony, Green has not shown reversible error.

Because the ALJ articulated clear reasons for discrediting Green's subjective complaints regarding the extent of her limitations and those reasons are supported by substantial evidence, we will not disturb the ALJ's credibility finding.  *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

## III.    CONCLUSION

Based on the foregoing reasons, we affirm the district court's order affirming the Commissioner's denial of Green's application for disability insurance benefits.