[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11581

Non-Argument Calendar

_____

ANAMARIE NARDELLI,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00132-MAP

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Anamarie Nardelli applied for Supplemental Security Income ("SSI"), but the Social Security Administration ("Administration") found she was not disabled and denied her application.  Nardelli challenges that denial, claiming that the administrative law judge ("ALJ") improperly substituted his judgment for that of evaluating psychological consultants.  We conclude that substantial evidence supported the ALJ's determination that Nardelli was not disabled and affirm the district court's decision to that end.

## I.    BACKGROUND

Plaintiff-Appellant Anamarie Nardelli applied for SSI in June 2020, alleging an onset of disability of May 7, 2012.[1]  Nardelli claims she is disabled due to diabetes, high blood pressure, borderline personality disorder, depression, and anxiety.

---

[1] Nardelli previously filed an SSI application in November 2018, which the Administration denied after the ALJ found she was not disabled.  That ALJ found Nardelli's depression, anxiety, and post-traumatic stress disorder to be severe impairments but reasoned that she could still perform light work with certain limitations.  The ALJ adjudicating her 2020 application admitted the prior decision, but that decision did not bind the Administration for later periods of alleged disability.  *See* Acquiescence Ruling 97-4(9), 62 Fed. Reg. 64038, 64039 (Dec. 3, 1997).

### A. Factual and Medical Background

Nardelli was 49 years old when she filed for SSI. She has a high school education and previously worked as a telephone sales representative and residence-leasing agent. Nardelli also worked delivery for Uber Eats for a time but stopped because she was involved in two car accidents in under thirty days.

Before applying for SSI, Nardelli underwent several psychological evaluations. We briefly recount the results of those evaluations below, as they informed the ALJ's disability analysis.

In April 2019, Nardelli had a consultative evaluation with Dr. Abraham Khan, M.D. At the time, Nardelli reported having depression, post-traumatic stress disorder ("PTSD"), and borderline personality disorder, which resulted in problems sleeping, crying spells, reduced appetite, and loss of enjoyment. Dr. Khan determined that Nardelli had PTSD, anxiety, depression, and borderline personality disorder. In Dr. Khan's opinion, these conditions affected Nardelli's mood, focus, and ability to be around others.

Also in April 2019, Nardelli underwent a consultative psychological evaluation that Dr. Steven N. Kanakis, Psy.D., P.A., performed. Nardelli's mental status examination findings all fell within normal limits, except for insight and judgment, which ranged from "fair to poor." Dr. Kanakis assessed Nardelli with cannabis-use disorder (moderate or severe), alcohol-use disorder (in sustained full remission), and cocaine-use disorder (in sustained full remission). Dr. Kanakis opined that Nardelli's prognosis was

guarded, but she was not at risk of decompensation in a work setting.

In a June 2020 function report, Nardelli attested that she performs basic tasks, such as caring for herself and her pet cat, living with her fiancé, cooking meals, cleaning, driving, and managing money. She stated that she could follow written instructions and had never been fired because of problems getting along with others. But Nardelli claimed that she does not leave the house unless it is necessary, avoids her family, and does not handle stress or adjustments to her routine well.

In August 2020, during a phone consultation with Dr. Jessica Rausch-Medina, Nardelli reported that she was very depressed and reluctant to leave home. Later, in a June 2021 phone consultation with Dr. Rausch-Medina, Nardelli reported anxiety symptoms (although she said she was able to stop panic attacks before they happen), leaving the house only once or twice a week, and severe depressive symptoms and feelings of worthlessness.

In October 2020, Dr. Nicholas Gehle, Psy.D., conducted a psychological consultative evaluation of Nardelli. Dr. Gehle assessed Nardelli with unspecified bipolar and related disorder, with moderate anxious distress. He opined that Nardelli's symptoms "appear[ed] to be severely impacting activities of daily living, vocational performance, and interpersonal interactions." But Dr. Gehle noted that Nardelli was able to perform basic activities, displayed fair social skills, demonstrated adequate judgment and insight, and appeared to have coherent and logical thought processes.

### B. *Administrative Medical Findings*

As part of her SSI application, Nardelli underwent psychological evaluations by state consultants, at both the initial and reconsideration stages.

First, Dr. Brian McIntyre, Ph.D., evaluated Nardelli's claim in October 2020. Dr. McIntyre found that Nardelli's depressive, bipolar and related disorders, anxiety or obsessive-compulsive disorders and personality disorders were all severe impairments. Dr. McIntyre relied on Dr. Gehle's mental-status exam. In doing so, Dr. McIntyre found that Nardelli was mildly impaired in understanding, remembering, or applying information; moderately impaired in interacting with others; moderately impaired in concentrating, persisting, or maintaining pace; and mildly impaired in adapting or managing herself.[2]

At the reconsideration level, in January 2021, Dr. Jermaine Robertson, Ph.D., affirmed Dr. McIntyre's evaluation of Nardelli's mental impairments. But Dr. Robertson opined that Dr. Gehle's evaluation overestimated the severity of Nardelli's limitations, which indicated minimal to moderate limitations on functional activity

---

[2] The Administration evaluates mental impairments in the context of four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). In rating the degree of limitation, the Administration employs a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4).

The Administration denied Nardelli's application, both initially and on reconsideration.

### C.  ALJ Hearing and Subsequent Procedural History

Nardelli requested a hearing before an ALJ, who again denied Nardelli's application for SSI.  In reaching that determination, the ALJ relied on the above record evidence as well as Nardelli's own testimony at a telephonic hearing in August 2021.  Among other things, Nardelli testified that she has trouble checking her mood in a social environment, is either easily distracted or overly focused, and sometimes lacks compassion and understanding.

The ALJ applied the five-step sequential framework for determining whether an individual is disabled.  Under that framework, the Administration asks whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) is disabled based on the congruence of their impairments with listed disabilities; (4) could perform any of their prior work, based on their RFC; and (5) could perform any other jobs existing in significant numbers in the national economy, based on their residual functional capacity, age, education, and work experience.  *See* 20 C.F.R. § 416.920(a)(4).

First, the ALJ determined that Nardelli had not engaged in substantial gainful activity since her application date.  Second, the ALJ found that Nardelli had the severe impairments of diabetes mellitus, hypertension, hypothyroidism, and obesity.  But the ALJ found Nardelli's mental impairments to be non-severe because they did not cause more than a minimal disruption to Nardelli's

abilities.[3] The ALJ also reasoned that Dr. Gehle, Dr. McIntyre, and Dr. Robertson's opinions were not persuasive because they relied on Nardelli's subjective reports of her symptoms and were inconsistent with the mental-status examination results.

At step three, the ALJ determined that Nardelli's impairments did not meet or equal the severity of one of the impairments that would trigger an automatic disability finding. Before step four, the ALJ found Nardelli had the residual functional capacity ("RFC")[4] to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). In doing so, the ALJ considered Nardelli's symptoms, medical opinions, and medical administrative findings, including the consultants' opinions that he found to be unpersuasive. The ALJ also noted that Nardelli neither sought nor "received essentially [any] treatment during the relevant time frame," so "the medical evidence does not support [Nardelli's] allegations of disabling symptoms and limitations."

---

[3] Specifically, the ALJ found no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself.

[4] The RFC is "the most [the claimant] can still do despite [her] limitations" in a work setting. 20 C.F.R. § 416.945(a)(1). In determining an RFC, the ALJ must consider all impairments, including those deemed non-severe at the second step. *Id.*; *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). Error at step two is harmless so long as the ALJ considers the alleged impairment in formulating the claimant's RFC, and substantial evidence supports the ALJ's conclusion. *Schink*, 935 F.3d at 1268.

Alternatively, the ALJ found that based on Nardelli's age, education, work experience, and RFC, the Medical-Vocational Guidelines directed a finding of "not disabled." So the ALJ found Nardelli was not disabled.

Nardelli requested review of the ALJ's decision, which the Administration's Appeals Council denied. Nardelli then filed suit in federal district court challenging the Administration's denial. The parties consented to the jurisdiction of a magistrate judge, who affirmed the ALJ's decision. Specifically, the magistrate judge concluded that substantial evidence in the form of mental-status exams supported the ALJ's determination, and the ALJ's use of the Medical-Vocational Guidelines was not overly mechanical. Nardelli timely appealed.

## II.    STANDARD OF REVIEW

We review de novo a district court's decision affirming the denial of SSI or disability benefits. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). In doing so, we determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.[5] *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by

---

[5] The Commissioner has delegated to the ALJ the responsibility of determining a claimant's RFC and whether the claimant is disabled. *See* 20 C.F.R. § 404.1546(c). So "ALJ" can be substituted for "Commissioner" in this context.

substantial evidence, shall be conclusive"). Substantial evidence means "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).

The substantial-evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 1157 (2019). Under this deferential standard, we do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Indeed, even if a preponderance of the evidence weighs *against* the Commissioner's decision, we affirm so long as substantial evidence supports it. *Buckwalter*, 5 F.4th at 1320. But "we will not 'affirm simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

## III.    DISCUSSION

On appeal, Nardelli argues that the ALJ improperly substituted his judgment for that of the state psychological consultants when concluding that Nardelli was not disabled. We disagree.

To be entitled to SSI, a claimant must be disabled, meaning the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

Under this framework, "the claimant bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).[6]  Diagnoses alone do not establish work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam).

An ALJ bears final responsibility for assessing a claimant's RFC and resulting limitations, based on all the relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c); *Phillips v Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded on other grounds by regulation*, 20 C.F.R. § 404.1520c. While an RFC determination must be based on the relevant evidence, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell*, 771 F.3d at 782

---

[6] At step five, the burden temporarily shifts to the Administration to show the existence of other jobs in the national economy that the claimant can perform even with her impairments. *Buckwalter*, 5 F.4th at 1321.

(alterations in original) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

To determine the weight to give a medical opinion or prior administrative medical finding, an ALJ must consider (1) the opinion's supportability or the relevance of the objective evidence to the opinion; (2) the opinion's consistency with the objective evidence; (3) the medical professional's relationship; (4) the professional's specialization; and (5) other factors, such as the medical professional's familiarly with other record evidence. 20 C.F.R. § 416.920c(c). The first two factors are the most important. *Id.* § 416.920c(b)(2). And the ALJ "must state with particularity the weight given to different medical opinions and the reasons" for that weight. *Winschel*, 631 F.3d at 1179.

Here, the ALJ determined that the state psychological consultants' opinions had low supportability and consistency for two main reasons. First, Dr. McIntyre and Dr. Robertson based their opinions on Dr. Gehle's analysis, which in turn relied on Nardelli's subjective reports. Second, Dr. McIntyre and Dr. Robertson's conclusions were inconsistent with Nardelli's unremarkable mental-status exam results and other record evidence that Nardelli demonstrates adequate social functioning, attention, and concentration.

The ALJ did not, as Nardelli claims, improperly substitute his medical judgment for that of the state psychological consultants. The ALJ stated and explained his findings as to the reports' supportability and consistency, finding they were "not persuasive" because they were "clearly inconsistent with the objective medical

evidence." Nardelli relies heavily on Dr. Gehle's opinion that Nardelli's symptoms "appear[ed] to be severely impacting [her] activities," but that opinion was apparently based entirely on Nardelli's subjective reports. So the ALJ was entitled to consider that statement in context and weigh it accordingly. *See Crawford*, 363 F.3d at 1159 (finding that substantial evidence supported the ALJ's "decision to discount" a physician's opinion because it was "inconsistent with his own treatment notes, unsupported by the medical evidence, and appear[ed] to be based primarily on [the claimant's] subjective complaints"); *Walker*, 987 F.3d at 1339 (similar, where medical opinion "conflicted with other evidence, including several examinations").

Nor, as Nardelli contends, was the ALJ required to order an additional psychological evaluation once he determined that the consultants' opinions were unpersuasive. An ALJ must "develop the record where appropriate but" need not "order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). That is exactly the case here, so the ALJ did not err in declining to order an additional evaluation.

Here, substantial evidence in the record supports the ALJ's finding that Nardelli was not disabled. Nardelli testified that she can perform a range of everyday tasks notwithstanding her physical and mental impairments. Nardelli largely performed within the range of normal outcomes on mental-status exams and presented

in a good mood with normal affect. Medical-record evidence reflected that Nardelli displayed fair social skills, demonstrated adequate judgment and insight, and appeared to have coherent and logical thought processes. This is not a case in which only a "scintilla" of evidence supports the ALJ's conclusion. Rather, "a reasonable person would accept" the evidence referenced in the ALJ's decision "as adequate." *See Crawford*, 363 F.3d at 1158.

Again, it is not our role to "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the" ALJ. *Mitchell*, 771 F.3d at 782 (quoting *Winschel*, 631 F.3d at 1178). Here, the ALJ applied the appropriate legal framework and explained his supportability and consistency findings. The ALJ was not required to accept the consultants' reports without question but rather retained the ability to weigh the consultants' opinions against other medical evidence. And even if some evidence in the record supports Nardelli's claim of disability, we have already determined that substantial evidence supports the ALJ's contrary finding. *See Buckwalter*, 5 F.4th at 1320. So we conclude that the ALJ did not err in affording low persuasive value to the consultants' reports in reaching his determination that Nardelli was not disabled.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's decision that the Administration properly denied Nardelli's application for Supplemental Security Income.

**AFFIRMED.**